**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | |
|---|---|
| WILLIE D. GARTH, ) | |
|       Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO.: 2:16-CV-428-PRC |
| ) | |
| NANCY A. BERRYHILL, ) | |
| Deputy Commissioner for Operations, ) | |
| Social Security Administration, ) | |
|       Defendant. ) | |

**OPINION AND ORDER**

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Willie D. Garth on September 23, 2016, and on Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security [DE 28], filed on May 30, 2018. Plaintiff requests that the February 12, 2015 decision of the Administrative Law Judge denying him disability insurance benefits and supplemental security income be remanded for further proceedings or, in the alternative, for an award of benefits. On September 13, 2018, the Commissioner filed a response, and Plaintiff filed a reply on September 24, 2018. For the following reasons, the Court grants Plaintiff's request for remand for further proceedings.

**PROCEDURAL BACKGROUND**

On January 23, 2013, Plaintiff Willie D. Garth filed applications for disability insurance benefits and supplemental security income, alleging disability beginning September 27, 2012. The claims were denied initially and on reconsideration. On December 3, 2014, a hearing was held via videoconferencing technology before Administrative Law Judge ("ALJ") Rebecca LaRiccia. Present at the hearing were Plaintiff, a witness, and an impartial vocational expert ("VE"). Plaintiff was not

represented at the hearing by an attorney or other representative. The ALJ issued a written decision on February 12, 2015, concluding that Plaintiff was not disabled based on the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2014.

2. The claimant has not engaged in disqualifying substantial gainful activity since September 27, 2012, the alleged onset date.

3. The claimant has the following severe impairments: Asthma, mild carpal tunnel syndrome, diabetes, knee arthritis, gout, mild concentric left ventricular hypertrophy and mild tricuspid regurgitation with history of congestive heart failure and obesity.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except he can only occasionally balance, stoop, kneel, crouch or crawl. He can occasionally climb ramps and stairs but never climb ladders, ropes or scaffolds. He must avoid extreme temperatures, humidity and wetness. He can only have occasional exposure to dust and mold. The claimant can frequently use the hands to handle and finger.

6. The claimant is capable of performing past relevant work as a Personnel director. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.

7. The claimant has not been under a disability, as defined in the Social Security Act, from September 27, 2012, through the date of this decision.

(AR 13-20).

Plaintiff then sought review before the Agency's Appeals Council, which denied his request on July 19, 2016, leaving the ALJ's decision as the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. §§ 405(g), 1383(c)(3).

**STANDARD OF REVIEW**

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir.

2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate her analysis of the evidence in order to allow the reviewing court to trace the path of her reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that [a reviewing court] may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that he suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent him from doing his previous work, but considering his age, education, and work experience, it must also

4

prevent him from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If no, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if no, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's residual functional capacity (RFC), age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's RFC. The RFC "is an administrative assessment of what work-related activities an individual can perform despite [his] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). The RFC should be based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four, whereas the

burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 885-86; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

## ANALYSIS

Plaintiff argues that this matter should be remanded due to errors regarding Plaintiff's unrepresented appearance at his administrative hearing, treating physician opinions, the RFC assessment, and Plaintiff's ability to perform past relevant work. The Court will address these arguments below.

### A. Representation at the Administrative Hearing

A claimant has a right to counsel at an administrative hearing on disability benefits. *Thompson v. Sullivan*, 933 F.2d 581, 584 (7th Cir. 1991) (citing 42 U.S.C. § 406; 20 C.F.R. § 404.1700). To secure a valid waiver of counsel, an ALJ must explain to an unrepresented claimant: "(1) the manner in which an attorney can aid in the proceedings, (2) the possibility of free counsel or a contingency arrangement, and (3) the limitation of attorney fees to 25% of past due benefits and required court approval of the fees." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007) (quoting *Binion v. Shalala*, 13 F.3d 243, 245 (7th Cir. 1994); *Thompson*, 933 F.2d at 584). If the claimant's waiver of counsel is invalid, the burden of proof shifts to the Commissioner to show that the ALJ adequately developed the record. *Id.* at 842 (citing *Binion*, 13 F.3d at 245).

Plaintiff concedes that the ALJ informed him that he was entitled to a representative, who would be paid on a contingency fee basis, and that such a representative could explain the law, help Plaintiff obtain and submit medical records, and present the evidence in the light most favorable to Plaintiff. Plaintiff argues, however, that the matter must be remanded because the ALJ failed to explain that a representative could question Plaintiff and the witness and could cross-examine the

vocational expert during the hearing. Plaintiff also asserts that the ALJ also committed error by failing to explain to Plaintiff that a representative would be able to contact doctors for clarification if the doctors' opinions failed to provide specific functional deficits.

Prior to Plaintiff's 2013 and 2014 administrative hearings, Plaintiff was mailed a document titled "Your Right to Representation" with the Notice of Hearing. (AR 181-82, 195-96). The document explains how an attorney can assist Plaintiff, how Plaintiff can receive free counsel, and the limit on attorney fees, including the cap of 25% of past due benefits. The Commissioner maintains that Plaintiff must have received these documents because he appeared at the hearings as scheduled in the Notices of Hearing.

At the December 3, 2014 administrative hearing, the ALJ informed Plaintiff:

> Now you are entitled to representation, and again let me just reiterate that again, a representative can be an attorney or non-attorney. That person would explain the law to you, help you obtain and submit medical records, and in general present the evidence in the light most favorable to your case. And they are paid on a contingency fee basis. There's [INAUDIBLE] people out there that don't take a fee, but they are paid on a contingency fee basis, 25% or $6,000 of past due benefits, whichever is less. If you would like some time to obtain representation, we can go ahead and give you that time.

(AR 30-31). Plaintiff declined the offer of additional time to obtain representation.

The Court need not determine whether the ALJ obtained a valid waiver of counsel, thus triggering a heightened duty to develop the record, because, as will be shown below, the record as developed at the administrative level shows remand to be necessary.

### B. Treating Physician Opinions

Plaintiff argues that the "little weight" assigned by the ALJ to the opinions of Plaintiff's treating physicians Dr. Anekwe and Dr. Artis was assigned in error.

7

Under the "treating physician rule," which is found in the version of the regulations that apply to Plaintiff's claim, the opinion of a treating physician on the nature and severity of an impairment is given controlling weight if it "is well-supported by medically acceptable clinical and laboratory techniques and is not inconsistent with the other substantial evidence in [the] case record." *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) (applicable to claims filed before March 27, 2017). "An ALJ must offer good reasons for discounting the opinion of a treating physician." *Israel v. Colvin*, 840 F.3d 432, 437 (7th Cir. 2016) (citing *Moore v. Colvin*, 743 F.3d 1118, 1127 (7th Cir. 2014)). When an ALJ does not give controlling weight to the opinion of a treating physician, she must weigh the opinion in accordance with the factors in 20 C.F.R. §§ 404.1527, 416.927. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) ("When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the opinion."); *Scrogham v. Colvin*, 765 F.3d 685, 697-98 (7th Cir. 2014); *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2006).

Plaintiff's first argument on this point is that the ALJ should have done more to develop the record in regard to medical evidence supporting these opinions or clarification of the opinions themselves. However, as described above, the Court has declined to address whether the ALJ had a heightened duty to develop the record due to a lack of valid waiver of representation. Thus, the Court will not address this argument, which is built upon the waiver of representation argument.

Plaintiff next posits that the ALJ did not address the regulatory factors listed in 20 C.F.R. §§ 404.1527, 416.927. Plaintiff maintains that the regulatory factors show that Dr. Anekwe's and Dr. Artis's opinions were due greater weight. Both doctors were treating physicians, and their

8

separate opinions were consistent with each other. Additionally, Dr. Artis is a specialist in cardiology.

Dr. Anekwe signed statements on November 20, 2014, and December 1, 2014, naming Plaintiff's diagnoses and concluding that "[d]ue to the above mentioned medical conditions [Plaintiff] is unable to get gainful employment or find suitable employment opportunity." (AR 525, 532). Dr. Anekwe did not include any opinion regarding specific limitations in Plaintiff's ability to work or symptoms that Plaintiff suffers from.

Dr. Artis signed a letter on December 3, 2014, that likewise lists only diagnoses and a conclusion that "[i]n view of his medical history [Plaintiff] has been unable to obtain gainful employment or find suitable employment opportunities." (AR 549).

The ALJ assigned Dr. Anekwe's opinion little weight "as the conclusion is not supported by Dr. [Anekwe's] own treatment notes or a review of the evidence of record as a whole." (AR 19). The ALJ assigned little weight to Dr. Artis's opinion because "Dr. Artis did not provide any support for his conclusions. Moreover, this opinion does not specify the limitations that prevent him from finding employment." *Id.*

The factors named by the ALJ—supportability and consistency—are from the relevant regulations. *See* 20 C.F.R. §§ 404.1527(c)(3), (4), 416.927(c)(3), (4). Further, the statements that Plaintiff is unable to find work does not bind the ALJ to a finding of disability, as they are opinions on issues reserved to the Commissioner. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d). Thus, the Court finds that the ALJ's decision to afford little weight to the opinions of Dr. Anekwe and Dr. Artis is based on the correct legal standard and is supported by substantial evidence. Plaintiff has not shown a reason for remand here.

9

## C. RFC Assessment

The RFC is a measure of what an individual can do despite the limitations imposed by his impairments. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); 20 C.F.R. §§ 404.1545(a), 416.945(a). The determination of a claimant's RFC is a legal decision rather than a medical one. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *Diaz*, 55 F.3d at 306 n.2. The RFC is an issue at steps four and five of the sequential evaluation process and must be supported by substantial evidence. SSR 96-8p, 1996 WL 374184, *3 (July 2, 1996); *Clifford*, 227 F.3d at 870.

"RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing' basis means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p at *1. "The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p, at *3. The relevant evidence includes medical history; medical signs and laboratory findings; the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment; evidence from attempts to work; need for a structured living environment; and work evaluations, if available. *Id*. at *5. In arriving at an RFC, the ALJ "must consider all allegations of physical and mental limitations or restrictions and make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC." *Id*. The "ALJ must also consider the combined effects of all the claimant's impairments, even those that
would not be considered severe in isolation." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009); *see also Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003).

ALJs must fairly evaluate the record. "Thus, although the ALJ need not discuss every piece of evidence in the record, the ALJ may not ignore an entire line of evidence that is contrary to the ruling. *Golembiewski*, 322 F.3d at 917(citations omitted) (citing *Dixon*, 270 F.3d at 1176; *Zurawski*, 245 F.3d at 888); *accord Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014); *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010) ("[W]e cannot uphold an administrative decision that fails to mention highly pertinent evidence" (citing *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009) (per curiam)).

In making a disability determination, the ALJ must consider a claimant's statements about his symptoms, such as pain, and how the symptoms affect his daily life and ability to work. *See* 20 C.F.R. §§ 404.1529(a), 416.929(a). Subjective allegations of disabling symptoms alone cannot support a finding of disability. *Id*. The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

(1) The individual's daily activities;
(2) Location, duration, frequency, and intensity of pain or other symptoms;
(3) Precipitating and aggravating factors;
(4) Type, dosage, effectiveness, and side effects of any medication;
(5) Treatment, other than medication, for relief of pain or other symptoms;
(6) Other measures taken to relieve pain or other symptoms;
(7) Other factors concerning functional limitations due to pain or other symptoms.

*See* 20 C.F.R. § 404.1529(c)(3), 416.929(c)(3). "Because the ALJ is in the best position to determine a witness's truthfulness and forthrightness . . . a court will not overturn an ALJ's credibility determination unless it is 'patently wrong.'" *Shideler v. Astrue*, 688 F.3d 306, 310-11 (7th Cir. 2012) (quotation marks omitted) (quoting *Skarbek v Barnhart*, 390 F.3d 500, 504-05 (7th Cir. 2004)); *see also Prochaska*, 454 F.3d at 738. Nevertheless, "an ALJ must adequately explain [her] credibility finding by discussing specific reasons supported by the record." *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013) (citing *Terry*, 580 F.3d at 477); SSR 96-7p, 1996 WL 374186, at *2 (Jul. 2, 1996)

("The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.").

The ALJ found that Plaintiff has "mild carpal tunnel syndrome," (AR 13), and correspondingly found that Plaintiff can frequently handle and finger, (AR 18). Under the Social Security Administration's framework, activity that is done "frequently" is that which is done up to two-thirds of the workday. SSR 83-10, 1983 WL 312151, *6 (Jan. 1, 1983).

The ALJ recounted Plaintiff's testimony that repetitive motions of his hands bother him, that he experiences numbness of his hands, and that his pain level was 5 on a scale of 10. The ALJ's analysis of Plaintiff's carpal tunnel syndrome is as follows:

> [T]his condition has caused numbness of the left wrist. Despite these complaints, he was allowed to return to work in two weeks after November 15, 2010. At the August 2013, internal medicine consultative examination, although he complained of carpal tunnel syndrome causing pain, numbness, and tingling and alleged that it prevented him from holding anything with his hands, Dynamometer testing showed that he was able to generate 18 kilograms of force bilaterally with his hands. He testified that he had some difficulty buttoning buttons, but was able to write a short note. Other than wearing splints at night, no other treatment has been prescribed. While carpal tunnel release surgery was discussed, the claimant indicated that he was not interested in this procedure, given his age. The claimant's allegations are not supported by the objective medical evidence and thus, the undersigned finds that he can frequently handle and finger in a work setting.

(AR 18 (citations omitted)).

The evidence cited and not cited by the ALJ regarding Plaintiff's carpel tunnel syndrome is troubling. The November 2010 incident occurred approximately 22 months prior to the alleged disability onset date and may not be indicative of his condition on the onset date. The ALJ does not cite to any medical interpretation of the dynamometer testing results, and the ALJ is not qualified

12

to determine on her own what this result means. *See Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014). The ability to write a short note says little about the ability to perform tasks with one's hands at the Social Security Administration's "frequent" level. One of Plaintiff's doctors considered Plaintiff's carpel tunnel syndrome to be severe enough to discuss carpel tunnel release surgery, which the ALJ diminishes by noting that Plaintiff ultimately decided not to pursue this option.

While the evidence suggests that Plaintiff retains some ability to handle and finger despite his carpal tunnel syndrome, the ALJ has not adequately explained how the evidence that she cites shows Plaintiff to be able to perform these activities "frequently" as defined by the regulations. Furthermore, the ALJ does not cite the findings of both consulting medical examiners, Dr. Smejkal and Dr Bautista, who opined that Plaintiff could "button, zip, and pick up coins but not repetitive." (AR 431, 485).

There is no logical bridge connecting the evidence cited by the ALJ and her finding that Plaintiff can handle and finger for over five hours in an eight hour work day. This finding is further called into question by the findings of the Social Security Administration's consulting examiners that Plaintiff cannot repetitively button, zip, and pick up coins. Remand is required on this basis.

In light of this need for remand, the Court need not analyze Plaintiff's other arguments regarding the ALJ's determination of his credibility and RFC.

### D. Past Relevant Work

Plaintiff argues that the ALJ committed reversible error by failing to make specific findings as to the physical and mental demands of his past work, and cites in support *Nolen v. Sullivan*, 939 F.2d 516, 519 (7th Cir. 1991).

13

In *Nolen*, the Seventh Circuit Court of Appeals reiterated "that an ALJ must specify the duties involved in a prior job and assess the claimant's ability to perform the specific tasks." 939 F.2d at 519 (quoting *Strittmatter v. Schweiker*, 729 F.2d 507, 509 (7th Cir. 1984)). But in both *Nolen* and *Strittmatter*, the ALJ described the previous jobs generally based on their exertional level. *Nolen*, 939 F.2d at 519 ("unskilled at the light exertional level"); *Strittmatter*, 729 F.3d at 509 ("sedentary"). The Seventh Circuit Court of Appeals has since construed *Nolen* narrowly, holding that "an ALJ cannot describe a previous job in a generic way, e.g., 'sedentary,' and on that basis conclude that the claimant is fit to perform all sedentary jobs without inquiring into any differences in what the job requires while sitting." *Cohen v. Astrue*, 258 F. App'x 20, 28 (7th Cir. 2007) (citing *Smith v. Barnhart*, 388 F.3d 251, 252-53 (7th Cir. 2004)). In *Cohen*, the ALJ considered the specific jobs the plaintiff had held, and, thus, the court found *Nolen* to be inapplicable. The court found that there was ample support for the ALJ's conclusion that the plaintiff could have returned to her previous jobs. In the instant case, like in *Cohen*, the ALJ's consideration of Plaintiff's past work did not consist simply of a generic label of "sedentary;" rather, the ALJ considered Plaintiff's specific past work as a "convenience store manager, retail store manager," "manager trainee," and "personnel director," which were described by the vocational expert. See (AR 20, 52-53); *see also Metzger v. Astrue*, 263 F. App'x 529, 533 (7th Cir. 2008) (finding sufficient an ALJ's reliance on vocational expert's testimony describing the duties of the claimant's past work). Although the ALJ's decision itself cites the vocational expert's testimony regarding the physical demand and skill level identified in the Dictionary of Occupational Titles (DOT), the record contains sufficient evidence of the requirements of the job. See *Metzger*, 263 F. App'x at 533 (citing *Nolen*, 939 F.2d at 518). At the hearing, the vocational expert testified that he did not need any work history clarification

from Plaintiff. (AR 52). In his Work History Report, which is in the record, Plaintiff provided details of the requirements of the jobs as he performed them. (AR 273-78). The vocational expert identified Plaintiff's past jobs by name and DOT code and provided their exertional and skill levels. The ALJ then set out for the vocational expert a hypothetical residual functional capacity consistent with the RFC determination in this decision. In response, the vocational expert testified that Plaintiff's past job as personnel director as generally performed in the national economy would accommodate those limitations. (AR 53).

Thus, the ALJ did not err by relying on the vocational expert's testimony, which was supported by the record, and the ALJ's decision at step four was not in error in light of the record evidence. Remand is not warranted on this basis.

### F. Request for Award of Benefits

Plaintiff asks the Court to reverse and remand for an award of benefits or, in the alternative, for additional proceedings. An award of benefits is appropriate "only if all factual issues involved in the entitlement determination have been resolved and the resulting record supports only one conclusion—that the applicant qualifies for disability benefits." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011). Based on the discussion above, remand, not an immediate award of benefits, is required.

### CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** Plaintiff's Brief in Support of Reversing the Decision of the Commissioner of Social Security [DE 28], **REVERSES** the final decision of the Commissioner of Social Security, and **REMANDS** this matter for further proceedings consistent with this Opinion and Order. The Court **DENIES** Plaintiff's request to award benefits.

So ORDERED this 26th day of October, 2018.

                                         s/ Paul R. Cherry
                                         MAGISTRATE JUDGE PAUL R. CHERRY
                                         UNITED STATES DISTRICT COURT